UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BROADCAST MUSIC, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 18-215-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MARY KATHERINE LOCKHART, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This is a copyright infringement action brought against the owner and manager of the Blue Moon in Richmond, Kentucky. Plaintiffs Broadcast Music, Inc.("BMI"), Del Sound Music, House of Cash, Inc., Warner-Tamerlane Publishing Corp., Eleksylum Music, Inc., No Surrender Music, Muscle Shoals Sound Publishing Co., Peermusic III, Ltd., and ARC Music Corp. have filed a motion for summary judgment, asserting that Defendants Mary Katherine Lockhart and Prentice Richardson knowingly and intentionally infringed upon four copyrights licensed by the plaintiffs. [Record No. 36] The plaintiffs request statutory damages, attorney's fees, and a permanent injunction.

**I.**

BMI is a non-profit performing rights organization that licenses the right to perform copyrighted music on behalf of the owners of the copyrights. [Record No. 36-4] BMI has non-exclusive performance rights that have been acquired from copyright owners, including publishing companies and independent composers. [Record No. 36-4] The other plaintiffs in this lawsuit are copyright owners of the various compositions at issue in this lawsuit. [Record

No. 1] After acquiring public performance rights from composers, BMI grants music users such as restaurants and nightclubs the right to publicly perform the copyrighted music. [Record No. 1]

Defendant Lockhart is the sole proprietor of Blue Moon. Her son, Defendant Richardson, helps manage the establishment. [Record No. 36-2, p. 6] Blue Moon is located at 525 East Irvine Street in Richmond, Kentucky. [Record No. 36-2, p. 3] Blue Moon regularly features live and recorded music. [Record No. 36-2, p. 3]

BMI learned that Blue Moon was offering live music without a license and without obtaining permission from the copyright owners prior to September 2014. [Record No. 36-4, p. 3] It repeatedly sent letters and called the defendants to explain that they needed to obtain permission for public performances of the copyrighted music from September 2014 to March 2017. [Record No. 36-5, p. 5] BMI offered to enter into a license agreement with the defendants, but the defendants rejected the offer. [Record No. 36-5, p. 5] The defendants previously held a license from BMI for Blue Moon that expired at the end of 2005. [Record No. 1, p. 3]

BMI notified the defendants on April 9, 2015, that they needed to cease public performances of music licensed by BMI. [Record No. 36-5, p. 5] It then sent follow-up letters on April 11, 2015, October 12, 2016, October 25, 2016, March 3, 2017, and March 6, 2017. [Record No. 36-5, pp. 3-4] However, public performances continued at Blue Moon. [Record No. 36-5, p. 4] A BMI investigator attended a public performance at Blue Moon on April 15, 2017. [Record No. 36-4] The investigator noted that three songs performed were in BMI's repertoire. [Record No. 36-5, p. 4] After, the investigator generated a report, an employee of

BMI confirmed those three songs and a fourth composition were in its repertoire. [Record No. 36-5, pp. 4-5] Those four compositions are the subject of this action.

## II.

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely on the assertions in its pleadings; rather, it must come forward with probative evidence to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 58.

## III.

**a. The defendants violated the Copyright Act by publicly performing four unauthorized works.**

The Copyright Act grants the owner of a copyright the exclusive right to perform or authorize a performance of the copyrighted work. 17 U.S.C. § 106(4). "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ." 17 U.S.C. § 501(a). To establish a claim of copyright infringement, the plaintiffs must demonstrate "(1) the originality and authorship of a composition; (2) a valid copyright under the formalities of the Copyright Act; (3) claimant's ownership of the copyright at issue; (4) defendant's public performance of the composition; and (5) defendant's failure to obtain permission from the claimant for such performance." *Broadcast Music, Inc. v. Rooster's, Inc.*, 2006 U.S. Dist. LEXIS 5535 *1, *9 (E.D. Ky. Feb. 14, 2006); *see also Jobete Music Co., Inc. v. Johnson Communications, Inc.*, 285 F. Supp. 2d 1077, 1082 (S.D. Ohio 2003).

The plaintiffs allege that the first three elements of a claim of copyright infringement are satisfied by the Ellwood Declaration. [Record No. 36-1, p. 7] The Ellwood Declaration and corresponding attachments include the names and performers of the works performed, the date of the copyrights, the registration certificates, and documents relating to the chain of ownership of the songs. [Record No. 36-4] "A copyright certificate is prima facie evidence of the first three elements of an infringement claim." *Broadcast Music, Inc. v. Rooster's, Inc.*, 2006 U.S. Dist. LEXIS 5535 *1, *10 (E.D. Ky. Feb. 14, 2006). Copyright registration certificates are included in the attachments to the Ellwood Declaration. [*See, e.g.*, Record No. 36-4, p. 36.]

The plaintiffs also include a Certified Infringement Report of Paul Young in support of the fourth element of copyright infringement, public performance. [Record No. 36-5, pp. 7-13] Young was hired to visit Blue Moon and develop a written report of the musical works that were performed. [Record No. 36-5, pp. 4-5] He visited Blue Moon on April 15, 2017,

and made a digital recording of the performance. [Record No. 36-5, p. 13] The defendants explicitly admitted that one of the songs at issue was performed at Blue Moon on April 15, 2017. [Record No. 36-3, p. 4] The defendants also admit that they have no evidence controverting that all of the compositions at issue were performed. [Record No. 36-3, pp. 4-5]

The defendants did not have a BMI license agreement or have the performances authorized. [Record No. 36-5, p. 3] BMI repeatedly offered to enter into a license agreement with the defendants, but the defendants chose not to enter into an agreement and continued to perform the copyrighted music. [*See, e.g.*, Record No. 36-5, p. 29.] The defendants admitted that they were contacted repeatedly by BMI offering to grant Blue Moon a license for public performances. [Record No. 32-2, p. 19] The evidence provided by the plaintiffs demonstrates that the performance was not authorized.

The defendants offer no evidence to dispute the fact that the plaintiffs have satisfied all five elements of copyright infringement. Thus, the plaintiffs have established that no genuine issue of material fact exists regarding the establishment of the five elements of a copyright infringement claim.

    i.    <u>The defendants are not exempt from the Copyright Act under 17 U.S.C. § 110(4).</u>

The defendants argue that 17 U.S.C. § 110(4) provides an exemption from the licensing requirements. Title 17 of the United States Code, section 110(4) provides:

> (4) performance of a nondramatic literary or musical work otherwise than in a transmission to the public, without any purpose of direct or indirect commercial advantage and without payment of any fee or other compensation for the performance to any of its performers, promoters, or organizers, if--
>     (A) there is no direct or indirect admission charge; or

> (B) the proceeds, after deducting the reasonable costs of producing the performance, are used exclusively for educational, religious, or charitable purposes and not for private financial gain, except where the copyright owner has served notice of objection to the performance under the following conditions:
>> (i) the notice shall be in writing and signed by the copyright owner or such owner's duly authorized agent; and
>> (ii) the notice shall be served on the person responsible for the performance at least seven days before the date of the performance, and shall state the reasons for the objection; and
> (iii) the notice shall comply, in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation.

"Whether the use of copyrighted material is in fact a financial success is not the deciding factor in determining the exemption under § 110(4). The language of § 110(4) requires that to be exempt the performance must be without any purpose of direct or indirect commercial advantage." *Bourne Co. v. Speeks*, 670 F. Supp. 777, 779 (E.D. Tenn. 1987) (internal citations and quotations omitted) (holding that the defendant was not entitled to the exemption under § 110(4) because even though the theatre did not make a profit it operated hoping to make a profit). "A profit-making enterprise which publicly performs copyrighted music is deemed to do so for profit . . . such an enterprise is considered profit-making even if it never actually yields a profit." *Broadcast Music, Inc. v. Meadowlake, Ltd.*, 2013 U.S. Dist. LEXIS 105850 *1, *15 (N.D. Ohio July 29, 2013) (quoting *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 480 (S.D. Georgia 1994)), *aff'd by Broadcast Music. Inc. v. Meadlowlake, Ltd.*, 754 F.3d 353 (6th Cir. 2014); *see also Herbert v. Shanley Co.*, 242 U.S. 591, 595 (1917). As long as there is some nexus between the performances and the general business of the bar, then the "for-profit" requirement is satisfied. *Broad. Music, Inc. v. JJ Squared Corp.*, 2013 U.S. Dist. LEXIS 180516 *1, *15 (E.D.N.Y. Dec. 26, 2013).

Richardson provides an affidavit explaining that there is no cover charge or entrance fee when the band plays, the band receives no compensation, there is no cash flow as a result of the performance, and the band members play for their own enjoyment, not for money. [Record No. 39-1, pp. 2-3] However, Richardson notes that the defendants make money on the Juke Box and commission on KENO sales. [Record No. 39-1, p. 2]

Blue Moon is a profit-making enterprise, even though it breaks even on cash flow. *See, e.g.*, *Major Bob Music*, 851 F. Supp. at 480 (explaining a local "watering-hole," the Buck and Doe Corral, is a "profit-making enterprise); *U.S. Songs, Inc. v. Downside Lenox, Inc.*, 771 F. Supp. 1220, 1226 (N.D. Ga. 1991) (noting the restaurant and bar at issue was "considered to be a profit-making enterprise even if it never actually makes a profit"). Therefore, the exception under 17 U.S.C. § 110(4) does not apply in this case.

### ii. The defendants are vicariously liable for the unauthorized performance.

The plaintiffs argue that the defendants are vicariously liable for the unauthorized public performance. "[T]he Copyright Act does not expressly render anyone liable for infringement committed by another . . . [But] vicarious liability is imposed in virtually all areas of the law." *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 434-35 (1984).

A party is jointly and severally liable if "he [or she] has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971). "A proprietor is liable under the Copyright Act for the copyright infringement of musicians whom the proprietor allows to perform in [her] establishment, even if the proprietor tells the musicians not to play protected works, or is unaware that the songs performed were copyrighted." *Broad. Music, Inc. v. 315 West 44th St.*, 1995 U.S. Dist. LEXIS 9575 *1, *4 (S.D.N.Y July 11, 1995)

(citations omitted); *see also Broad. Music, Inc. v. JJ Squared Corp.*, 2013 U.S. Dist. LEXIS 180516 at *15.

The Blue Moon is a sole proprietorship, so the plaintiffs seek to impose vicarious liability through the tort theory of respondeat superior. The defendants admit that they had the right and ability to direct and control activities at the Blue Moon and that they operated and maintained the Blue Moon. [Record No. 36-2, pp. 14-15] Further, Lockhart had a direct financial interest in Blue Moon. [Record No. 36-2, p. 15] Additionally, Richardson was a performer of the unauthorized performance. There is no genuine issue of material fact that Lockhart is vicariously liable for the unauthorized performance on April 15, 2017.

**b. The plaintiffs are entitled to attorney's fees and costs.**

Section 505 allows the Court to award full costs, including reasonable attorney's fees. 17 U.S.C. § 505. Courts routinely award reasonable attorneys fees in these actions. *See, e.g., Coleman v. Payne*, 698 F. Supp. 704, 707-08 (W.D. Mich. 1988). The Court retains discretion in deciding whether to grant attorney's fees. 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The plaintiffs state that they will tender a declaration of counsel for attorney's fees and costs if the Court grants the present motion. The Court finds that the plaintiffs are entitled to attorney's fees and costs, but will reserve determining the appropriate amount of attorney's fees until after the plaintiffs tender the appropriate information in support.

**c. The defendants will be enjoined from performing music within BMI's repertoire, unless and until they get a proper license.**

The Copyright Act allows the Court to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "While the issuance of an injunction is in the discretion of the court, courts have traditionally

granted permanent injunctions if liability is established and a continuing threat to a copyright exists." *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 492 (6th Cir. 2007); *Superhype Pub'l, Inc. v. Vasiliou,* 838 F. Supp. 1220, 1226 (S.D. Ohio 1993) ("A showing of past infringement and a substantial likelihood of future infringement entitles a copyright owner to permanent injunction."). The Court may issue a permanent injunction without an evidentiary hearing if there are no triable issues of fact involved. *United States v. McGee,* 714 F.2d 607, 613 (6th Cir. 1983). Further, the Court may grant injunctive relief even if the defendants have secured licenses after the time of infringement. *See Milene Music v. Gotauco*, 551 F. Supp. 1288, 1295 (D.R.I. 1982).

Because the defendants continued to hold live performances after receiving multiple letters and phones calls from BMI, there is a strong likelihood that copyright infringement may occur in the future at Blue Moon, thus, injunctive relief is appropriate. The defendants will be enjoined from performing any of the songs within the BMI repertoire unless and until they receive the proper license.

### d. The plaintiffs are entitled to $14,000.00 in statutory damages.

Section 504(c)(1) provides for statutory damages for each act of infringement between $750 and $30,000. 17 U.S.C. § 504(c)(1). However, if the copyright owner establishes willful infringement, a Court can increase statutory damages up to $150,000. The Court may also grant less than $750 if the Court finds that the infringement was innocent. The Court has discretion in awarding damages within the statutorily prescribed range. *See Fitzgerald Pub. Co. v. Baylor Pub. Co*., 807 F.2d 1110, 1116 (2d Cir. 1986).

> In determining the amount of damages to be awarded, courts generally consider: (1) the infringer's blameworthiness, i.e., whether the infringement was willful, knowing, or innocent; (2) the expenses saved and the profits reaped by the

> defendants in connection with the infringement; (3) the revenues lost by the plaintiffs due to the defendants' conduct; and (4) the goal of deterring wrongful conduct. As a starting point, some courts also consider the amount of money it would have cost the infringer to properly obtain a license.

*Broad. Music, Inc. v. Rooster's, Inc.*, 2006 U.S. Dist. LEXIS 36616 *1, *7 (E.D. Ky. Mar. 29, 2006) (internal citations and quotations omitted).

The plaintiffs seek statutory damages in the amount of $7,000 per infringement, totaling $28,000 for the four infringements. The plaintiffs note that "[c]ourts have consistently held that a statutory damages award between three to five times the amount that the plaintiffs would have received in licensing fees is appropriate under § 504(c)." *See, e.g., Broadcast Music, Inc. v. Pub Dayton*, *LLC*, No. 3:11-cv-58, 2011 U.S. Dist. LEXIS 57211 (S.D. Ohio May 27, 2011).

They argue that the defendants willfully violated the Copyright Act and continued to violate the Act even though they had been explicitly told not to. BMI sent numerous letters, called the establishment, and finally visited the Blue Moon to offer the defendants the chance to enter into a license agreement. The defendants knowingly and continually violated the Copyright Act. Further, the plaintiffs explain that the estimated license fees from September 2014 to January 30, 2019, would be approximately $5,108.40. [Record No. 36-4, p. 6] However, one factor to consider in awarding statutory damages is the profits reaped by the defendants in connection with the infringement. The defendants' interrogatories and affidavit illustrate that the Blue Moon does not turn a profit, does not charge a cover for performances, and the band does not get paid. [Record Nos. 39-1, pp. 2-3; 36-2, p. 6]

This Court will impose statutory damages of $3,500.00 per infringement, for a total of $14,000.00. This amount is sufficient to compensate the plaintiffs and serves the goal of deterring wrongful conduct.

## IV.

The plaintiffs have put forth evidence demonstrating that the defendants publicly performed four copyrighted works without authorization. The defendants did not provide any evidence creating a genuine issue of material fact. Thus, the plaintiffs are entitled to summary judgment as a matter of law. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiffs BMI, Del Sound Music, House of Cash, Inc., Warner-Tamerlane Publishing Corp., Eleksylum Music, Inc., No Surrender Music, Muscle Shoals Sound Publishing Co., Peermusic III, Ltd., and ARC Music Corp.'s Motion for Summary Judgment [Record No. 36] is **GRANTED**.

2. The defendants are permanently enjoined from performing any work in the BMI repertoire at Blue Moon, unless and until a proper license granting such right is obtained.

3. The defendants shall pay to plaintiffs' statutory damages in the amount of $3,500.00 per infringement for a total of $14,000.00, for which the defendants shall be jointly and severally liable.

4. The plaintiffs are entitled to attorney's fees and costs. The plaintiffs shall submit evidence of their attorney's fees within **fourteen (14) days** of the entry of this Memorandum Opinion and Order. Thereafter, the defendants shall have **fourteen (14) days** to file any objections to the plaintiffs' submission.

Dated: March 12, 2019.


Signed By:
*Danny C. Reeves*
United States District Judge